UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DEBORAH MARIE COLLINS,

          Plaintiff,

   v.                                   19-CV-01350-LJV
                                         DECISION & ORDER

COMMISSIONER OF SOCIAL
SECURITY,

          Defendant.

_____

On October 3, 2019, the plaintiff, Deborah Marie Collins, brought this action

under the Social Security Act ("the Act").  She seeks review of the determination by the

Commissioner of Social Security ("Commissioner") that she was not disabled.[1]  Docket

Item 1.  On February 28, 2020, Collins moved for judgment on the pleadings, Docket

_____

[1] Collins applied for both Social Security Income ("SSI") and Disability Insurance
Benefits ("DIB").  One category of persons eligible for DIB includes any adult with a
disability who, based on her quarters of qualifying work, meets the Act's insured-status
requirements.  *See* 42 U.S.C. § 423(c); *see also Arnone v. Bowen*, 882 F.2d 34, 37-38
(2d Cir. 1989).  SSI, on the other hand, is paid to a person with a disability who also
demonstrates financial need.  42 U.S.C. § 1382(a).  A qualified individual may receive
both DIB and SSI, and the Social Security Administration uses the same five-step
evaluation process to determine eligibility for both programs.  *See* 20 C.F.R
§§ 404.1520(a)(4) (concerning DIB); 416.920(a)(4) (concerning SSI).

Collins sent a letter to the Social Security Administration on February 7, 2018,
apparently withdrawing her SSI claim.  Docket Item 4 at 251.  Nevertheless, the ALJ
addressed Collins's claims for both DIB and SSI, *id.* at 15, and Collins now asks this
Court to review the Commissioner's denial of both claims, Docket Item 6-1 at 1.
Because this Court remands for reconsideration of the ALJ's decision, and because the
same standard applies to both, whether or not Collins withdrew her SSI claim does not
affect this decision.

Item 6; on April 28, 2020, the Commissioner responded and cross-moved for judgment

on the pleadings, Docket Item 9; and on June 18, 2020, Collins replied, Docket Item 11.

For the reasons stated below, this Court grants Collins's motion in part and

denies the Commissioner's cross-motion.[2]

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of

inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).  The court "must first

decide whether [the Commissioner] applied the correct legal principles in making the

determination."  *Id*.  This includes ensuring "that the claimant has had a full hearing

under the . . . regulations and in accordance with the beneficent purposes of the Social

Security Act."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v.*

*Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)).  Then, the court "decide[s] whether the

determination is supported by 'substantial evidence.'"  *Johnson*, 817 F.2d at 985

(quoting 42 U.S.C. § 405(g)).  "Substantial evidence" means "more than a mere scintilla.

It means such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting

*Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  "Where there is a reasonable

basis for doubt whether the ALJ applied correct legal principles, application of the

substantial evidence standard to uphold a finding of no disability creates an

---

[2]  This Court assumes familiarity with the underlying facts, the procedural history,
and the ALJ's decision and will refer only to the facts necessary to explain its decision.

unacceptable risk that a claimant will be deprived of the right to have her disability

determination made according to correct legal principles."   *Johnson*, 817 F.2d at 986.

## DISCUSSION

Collins argues that the ALJ erred in four ways.  Docket Item 6-1.  First, Collins

argues that the ALJ's determination that she was not disabled for the year and three

months when she was hospitalized or living in an assisted-living facility is not supported

by substantial evidence.  *Id.* at 17.  Second, Collins argues that the ALJ's refusal to hear

testimony from her live-in partner, Paul Richter, denied her a full and fair hearing.  *Id.* at

19.  Third, Collins argues that the ALJ's mental residual functional capacity ("RFC")

determination is not supported by substantial evidence and that the ALJ erred in

"render[ing] an RFC finding with no mental limitations."  *Id.* at 21.  Finally, Collins argues

that the ALJ erred in failing to acknowledge or consider the medical opinion of Sarah

Mahler, Collins's social worker at Mercy Hospital of Buffalo ("Mercy Hospital").  *Id.* at 24.

This Court agrees that the ALJ erred.  Because that error was to Collins's

prejudice, the Court remands this case to the Commissioner.

## I.      REFUSAL TO HEAR TESTIMONY

"Because a hearing on disability benefits is a non-adversarial proceeding, the

ALJ generally has an affirmative obligation to develop the administrative record."  *Perez*

*v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) (citing *Echevarria v. Sec'y of Health & Human*

*Servs.*, 686 F.2d 751, 755 (2d Cir. 1982)); *see also Pratts v. Chater*, 94 F.3d 34, 37 (2d

Cir. 1996) (same).  Even though it is generally true that "the presentation and

questioning of witnesses [is] permissible, not requisite," *Infante v. Apfel*, 2001 WL

536930, at *9 n.7 (S.D.N.Y. May 21, 2001), there are circumstances when an ALJ's duty to develop the record requires her to question witnesses, *Lopez v. Sec'y of Health & Human Servs.*, 728 F.2d 148, 150-51 (2d Cir. 1984) ("We have remanded cases when it appears that the ALJ has failed to consider relevant and probative evidence which is available to him.") (citing *Cutler v. Weinberger*, 516 F.2d 1282, 1286 (2d Cir. 1975)).

In *Lopez*, for example, the Second Circuit found that the ALJ erred in refusing to hear the cumulative but corroborative testimony of the claimant's friend when the ALJ said he would "accept the [claimant's] testimony" but nonetheless denied benefits based on his finding that the claimant's allegations of pain were not credible. *Id.* at 150. The Second Circuit reasoned that the friend—who the claimant described as "help[ing] [her] with everything that [she] cannot do for [herself]"—"could have provided effective testimony about [the claimant's] ability to function on a daily basis." *Id.*; *see also Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1298 (9th Cir. 1999) ("[T]estimony from lay witnesses who see the claimant every day is of particular value.").

The same is true here. Similar to the ALJ in *Lopez*, the ALJ here refused to hear the cumulative but corroborative testimony of Collins's live-in partner, Docket Item 4 at 170-71 ("I don't think I need him to confirm her testimony."), and then rejected Collins's uncorroborated testimony about her mental limitations.[3] For example, Collins testified

---

[3] Like the ALJ in *Lopez*, the ALJ here signaled that he did not need to hear from Richter because he would accept Collins's testimony:

ALJ: . . . Your client seems to have described her condition pretty well.
ATTY: Yes, she did. I'm sure he would confirm her testimony.
ALJ: Yeah, I don't think I need him in to confirm her testimony.

Docket Item 4 at 170-71.

4

that she has trouble paying attention, needs instructions repeated to her, forgets to take her medications, and needs help with daily activities such as shopping and cooking. *E.g.*, Docket Item 4 at 152-54, 158-59.  Despite that testimony, the ALJ found that Collins could "take medications," "shop," "cook meals," and "manage funds" on her own. *Id.* at 18.  So, like the claimant's friend in *Lopez*, Richter "could have provided effective testimony about [Collins's] ability to function on a daily basis."  *See Lopez*, 728 F.2d at 150.  And as in *Lopez*, that might well have made a difference.[4]

What is more, Collins's memory issues interfered with her ability to provide complete testimony at her disability hearing.  *See* Docket Item 4 at 156 (does not know why she remained at Mercy Hospital for so long); *id.* at 154 (does not remember how long she worked at Arby's); *id.* at 156 (uncertain about relearning how to walk); *id.* at 162 (does not know how often home care agency comes to her house); *id.* at 151-52 (does not remember how often she had seizures).  Richter's testimony might have filled this gap.  And while Collins's testimony generally recounted how her memory issues affect her daily life, *see id.* at 161 (difficultly remembering conversations); *id.* at 158-59 (forgets to take medications), the record lacks important detail about how often those issues occur and how severe they are when they do.  Because Richter helps Collins every day, *see id.* at 157-59, his testimony may well have given the ALJ a better understanding of how Collins's memory limitations and ability to process instructions impact her ability to function independently.

---

[4] The Court recognizes that unlike the claimant in *Lopez*, Collins was represented by an attorney.  But the ALJ has an affirmative duty to develop the record "even when the claimant is represented by counsel or . . . by a paralegal."  *Perez*, 77 F.3d at 47.

## II.   OTHER SOURCE OPINION

When determining a claimant's RFC, an ALJ must evaluate every medical opinion received "[r]egardless of its source."  20 C.F.R. § 404.1527(c).  That evaluation requires the ALJ to resolve "[g]enuine conflicts" among the sources.  *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (citation omitted).  And before an ALJ may deny a claimant's application, he must "confront the evidence in [the claimant's] favor and explain why it was rejected."  *Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2016).

"[O]nly 'acceptable medical sources' can be considered treating sources . . . whose medical opinions may be entitled to controlling weight.  'Acceptable medical sources' are further defined (by regulation) as licensed physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologists."  *Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008) (citing 20 C.F.R. § 416.913(a) and SSR 06-03P, 2006 WL 2329939 (Aug. 9, 2009)).  But an ALJ must at least consider the opinions of "other sources," 20 C.F.R. § 404.1527(c)—such as social workers[5]—even if the ALJ is "free to discount" such opinions "in favor of the objective findings of other medical doctors," *see Genier*, 298 F. App'x at 108-09.

Moreover, the ALJ should explain the weight assigned to the opinions of "other sources" that "may have an effect on the outcome of the case," 20 C.F.R. §

---

[5] When Collins filed her claim in April 2016, social workers were "other source[s]," *see* 20 C.F.R. § 416.913(d)(3) (2016), whose opinions could not "establish the existence of a medically determinable impairment"; but an opinion from such a source still could "outweigh the opinion of an 'acceptable medical source[ ]' . . . [if, f]or example, . . . [the source] has seen the individual more often . . . and has provided better supporting evidence and a better explanation for his or her opinion," *see* Titles II and XVI: Considering Opinions and Other Evidence from Sources Who Are Not "Acceptable Medical Sources" in Disability Claims, 71 Fed. Reg. 45,593, 45,596 (Aug. 9, 2006]).

404.1527(f)(2), in a way that "allows a claimant or subsequent reviewer to follow the

[ALJ's] reasoning."  SSR 06-03P, 2006 WL 2329939, at *6.  In other words, the ALJ

"must provide an 'accurate and logical bridge' between the evidence and the conclusion

that the claimant is not disabled, so that . . . 'a reviewing court . . . may assess the

validity of the agency's ultimate findings and afford [the] claimant meaningful judicial

review.'"  *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008) (third alteration in original)

(quoting *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004)).

20 C.F.R. § 404.1527(c) enumerates several factors that the ALJ should consider

in determining the weight given to the opinion of an "other source":

> [1] the length and frequency of the treating relationship; [2] the nature and
> extent of the relationship; [3] the amount of evidence the source presents
> to support his or her opinion; [4] the consistency of the opinion with the
> record; [5] the source's area of specialization; [6] and any other factors the
> claimant brings to the ALJ.

*Tolliver v. Astrue*, 2013 WL 100087, at *3 (W.D.N.Y. Jan. 7, 2013) (citations omitted).

Using those factors to articulate the ALJ's reasoning is more than just a good idea.  In

*Tolliver*, for example, the court remanded when the ALJ failed to use those factors to

explain why he assigned little weight to the opinion of a nurse practitioner who saw the

patient far more frequently than did the treating physician.  *Id.*; *cf. Estrella v. Berryhill*,

925 F.3d 90, 96 (2d Cir. 2019) (holding that "[a]n ALJ's failure to 'explicitly' apply the

[section 404.1527(c)] factors when assigning weight" to a treating source opinion "is a

procedural error") (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013) (per

curiam))).

Here, the ALJ did not evaluate—or even acknowledge—the opinion of Sarah

Mahler, Collins's social worker at Mercy Hospital.  On July 8, 2016, six months after

7

Collins suffered a cerebral aneurysm and the day Collins transitioned from Mercy Hospital to Ride View Manor, an assisted living facility, Docket Item 6-1 at 8-9, Mahler opined that it would be "irresponsible to place [Collins] on her own in the community," Docket Item 4 at 201. Mahler was hopeful that Collins would improve, but as of Collins's discharge from Mercy Hospital on July 8, 2016, she required one-on-one assistance "for her safety and cuing," could not order meals without help, would "forget[] she needs assistive devices to see or put[] on two pairs of contact[ lenses] as she forgot one was already in," and "believe[d] she work[ed] [at Mercy Hospital] and [was] not a patient." *Id.*

The omission of Mahler's opinion is particularly troubling given the ALJ's finding that Collins was not disabled when she was either hospitalized or in a rehabilitation facility from January 3, 2016, until April 26 2017.[6] Docket Item 4 at 15; Docket Item 6-1 at 8-9. In making this determination, the ALJ gave "substantial weight" to the opinion of Dr. Susan Santarpia, Docket Item 4 at 22, who, during a consultative exam on June 7, 2016, found that even though Collins was still hospitalized, she had no "cognitive problems that would significantly interfere with [her] ability to function on a daily basis," *id.* at 669. Dr. Santarpia may have based that opinion on her understanding that Collins was living at Mercy Hospital only because she had "no [other] place to live." *Id.* at 666. But Mahler's letter contradicts Dr. Santarpia's opinion, giving an alternate, credible, and

---

[6] A person is disabled if she cannot "engage in any substantial gainful activity" due to a "physical or mental impairment" for at least one year. 42 U.S.C. § 423(d)(1)(A). It is hard to comprehend how Collins was not disabled at least from January 3, 2016, when she suffered her cerebral aneurysm, until April 26, 2017, when she was finally released after nine months in an assisted-living facility following her six-month hospitalization. And that is especially so given Mahler's July 2016 evaluation.

corroborated explanation of why Collins remained hospitalized and specifically addressing how the residual effects of Collins's cerebral aneurysm affected her ability to function independently.

At the very least, the ALJ was obligated to acknowledge Mahler's opinion and explain why he credited Dr. Santarpia's one-time evaluation more than Mahler's longitudinal assessment in light of the 20 C.F.R. § 404.1527(c) factors.  Indeed, it appears that Mahler was Collins's social worker for the six months she was hospitalized at Mercy Hospital and that Mahler's opinion relied on her personal observation of Collins over that time.  *See* Docket Item 4 at 201.  Moreover, Mahler's opinion on July 8, 2016, echoed the same concerns that she had raised about three months earlier in April 2016: Collins suffered from delusions and memory problems.  *See id.* at 327.  And those opinions are consistent with other evidence in the record, including the opinion of Collins's neurologist at Mercy Hospital, Dr. Peterkin Lee-Kwen, who noted Collins's "scrambled" thoughts and confusion in February 2016.  *Id.* at 471-72.

As the Second Circuit has noted, because "[c]ycles of improvement and debilitating symptoms [of mental illness] are a common occurrence, . . . it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is [not disabled]."  *Estrella*, 925 F.3d at 97 (second alteration in original) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014)).  For that reason, the Second Circuit has "cautioned that ALJs should not rely heavily on the findings of consultative physicians after a single examination," a "concern [that] is even more pronounced in the context of mental illness where . . . a one-time snapshot of a claimant's status may not be indicative of her

longitudinal mental health."  *Id.* at 98 (first quoting *Selian*, 708 F.3d at 419.  Here, the ALJ's reliance on the consultant's opinion, without even mentioning the social worker's, highlights the very concern that the Second Circuit found so troubling.

## III.    MENTAL RFC ANALYSIS

"[S]tep two of the Commissioner's five-step analysis . . . requires the ALJ to determine whether [a] mental impairment is 'severe' or 'not severe.'"  *Wells v. Colvin*, 727 F.3d 1061, 1064 (10th Cir. 2013) (quoting 20 C.F.R. §§ 404.1520a(b)-(d), 416.920a(b)-(d)).  "But the regulations also instruct that even if the ALJ determines that a claimant's medically determinable mental impairments are 'not severe,' he must further consider and discuss them as part of his [RFC] analysis at step four."  *Id.* Specifically, the ALJ "must consider the combined effect of all the claimant's medically determinable impairments, *whether severe or not severe.*"  *Id.* at 1065 (emphasis in original).

"[T]he Commissioner's procedures do not permit the ALJ to simply rely on his finding of non-severity as a substitute for a proper RFC analysis."  *Id.* (citing SSR 96-9p, 1996 WL 374184, at *4 (July 2, 1996)).  Moreover, "the ALJ's 'RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and nonmedical evidence.'"  *Id.* (quoting SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996)).  Even when an ALJ uses "language suggesting he had excluded [mental impairments] from consideration as part of his RFC assessment[ ] based on his determination of non-severity" at step two, he must explicitly analyze the non-severe impairments as part of his RFC analysis, *see id.*, unless he finds "at step two that a medically determinable impairment posed no restriction on the claimant's

work activities," *id.* at 1065 n.3.  So if the ALJ "find[s] 'mild' restrictions" resulting from a non-severe impairment, the ALJ must address those restrictions as part of his RFC analysis.  *Id.*  And when the ALJ fails to address non-severe mental impairments in formulating a claimant's RFC, it is "necessary to remand [the] case for further consideration."  *Parker-Grose v. Astrue*, 462 F. App'x 16, 18 (2d Cir. 2012).

Here, the ALJ found that Collins has mild mental limitations in several areas of mental functioning:  "understanding, remembering, or applying information"; "interacting with others"; "ability to concentrate, persist, or maintain pace"; and "ability to adapt or manage herself."  Docket Item 4 at 18.  After concluding that Collins's mental limitations were not severe, the ALJ noted that "the following RFC assessment reflects the degree of limitation I have found in the 'paragraph B' mental function analysis."  *Id.* at 19.  But the RFC did not "reflect[ ]" any mental limitation; and the RFC analysis did not even mention any "degree of limitation [that the ALJ found]" in any "mental function analysis." *Id.*

Such lip service is insufficient to satisfy the legal requirement that the "RFC assessment . . . include a narrative discussion describing how the evidence *supports each conclusion*, citing specific medical facts [e.g., laboratory findings] and nonmedical evidence [e.g., daily activities, observations]."  *Wells*, 727 F.3d at 1069 (emphasis in original) (quoting SSR 96-8p, 1996 WL 374184, at *7).  In fact, the Tenth Circuit has found a statement similar to the ALJ's here to be "inadequate under the regulations and the Commissioner's procedures."  *Id.* at 1069.  In *Wells*, "after stating his conclusion that [a claimant's] mental impairments were non-severe, the ALJ stated that 'these findings do not result in further limitations in work-related functions in the RFC assessment

below.'" *Id.* (quoting the record).  That was not good enough.  And neither is the conclusory reference that the ALJ made in the RFC here.

In fact, the error here is worse than in *Wells*:  here, the ALJ said that Collins's non-severe mental limitations were "reflect[ed]" in the RFC, but the RFC included only physical limitations.[7]  *See* Docket Item 4 at 19.  If Collins's RFC had included some limitation reflecting the mild mental impairments that the ALJ found at step two, or if the ALJ had explained how the RFC "reflect[ed]" those impairments without including some limitation, this Court might conclude that there was no error or that any error was harmless.  But because Collins's RFC includes no mental limitations whatsoever, and because the ALJ said that the RFC reflected mental limitations, *id.*, this Court cannot be certain that the ALJ actually considered Collins's mental issues when fashioning her RFC.  Therefore, even if substantial evidence supports the ALJ's determination that Collins's mental impairments are not severe, remand still is necessary "for further consideration because the ALJ failed to account [for Collins's] mental limitations when determining her RFC."  *Parker-Grose*, 462 F. App'x at 18.

## CONCLUSION

For all the above reasons, this Court remands the matter for reconsideration of Richter's testimony, Mahler's opinion, and Collins's mental impairments in the RFC

---

[7] The ALJ found that Collins "has the residual functional capacity to perform light work as defined at 20 CFR 404.1567(b) and 416.967(b) except the claimant can be occasionally exposed to unprotected heights and moving mechanical parts, occasional [sic] operate a motor vehicle, occasionally climb ramps and stairs, occasionally climb ladders, ropes and scaffolds; and she can occasionally balance, stoop, kneel, crouch, and crawl."  Docket Item 4 at 19.

12

analysis. The Court "will not reach the remaining issues raised by [Collins] because they may be affected by the ALJ's treatment of this case on remand."[8] *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003); *see also Bonet ex rel. T.B. v. Colvin*, 2015 WL 729707, at *7 (N.D.N.Y. Feb. 18, 2015) ("Given the need to apply the proper legal standard, the Court will decline at this time to consider whether substantial evidence exists to support the findings the ALJ made.").

The Commissioner's motion for judgment on the pleadings, Docket Item 9, is DENIED, and Collins's motion for judgment on the pleadings, Docket Item 6, is GRANTED in part and DENIED in part. The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated:     November 4, 2020
           Buffalo, New York

_____
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE

---

[8] Although Collins did not raise this issue, the ALJ's explanations for the weight giving to the opinions of her treating sources are largely conclusory. *See* Docket Item 4 at 22. On remand, the ALJ must "'explicitly' apply the *Burgess* factors when assigning weight" to Collins's treating source opinions. *See Estrella*, 925 F.3d at 95.